UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KRISTINA L. B.[1], | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
|         v. | )  No. 1:21-cv-00974-DLP-JMS |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
|         Defendant. | ) |

<u>**ORDER**</u>

Plaintiff Kristina L. B. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 423(d). For the reasons set forth below, the Court hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings.

### I.    PROCEDURAL HISTORY

On May 2, 2016, Kristina protectively filed an application for Title XVI SSI. (Dkt. 16-2 at 13, R. 12). Kristina's application alleged disability resulting from ADD; a learning disability; ADHD; speech problems; reading comprehension problems; carpal tunnel syndrome; left ankle dysfunction; depression; anxiety; high blood

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

1

pressure; high cholesterol; obesity; headaches; asthma; and allergies. (Dkt. 16-6 at 6, R. 177). The Social Security Administration ("SSA") denied Kristina's claim initially on July 14, 2016, (Dkt. 16-3 at 13, R. 74), and on reconsideration on September 22, 2016. (Id. at 26, R. 87). On November 21, 2016, the SSA granted Kristina's written request for a hearing. (Dkt. 16-4 at 25-26, R. 111-12).

On June 6, 2018, Administrative Law Judge ("ALJ") Teresa A. Kroenecke conducted a hearing, where Kristina, her counsel, and vocational expert Constance Brown all appeared in person. (Dkt. 16-2 at 34, R. 33). On July 5, 2018, ALJ Kroenecke issued an unfavorable decision finding that Kristina was not disabled. (Dkt. 16-2 at 13-27, R. 12-26). Kristina appealed the ALJ's decision and, on May 8, 2019, the Appeals Council denied Kristina's request for review, making the ALJ's decision final. (Dkt. 16-2 at 2-5, R. 1-4). Kristina sought judicial review of ALJ Kroenecke's decision in this Court on July 25, 2019. (Dkt. 16-9 32-33, R. 565-66). On June 19, 2020, District Judge James Patrick Hanlon reversed and remanded the decision for further proceedings. (Dkt. 16-9 at 36-52, R. 569-85). On July 19, 2020, the Appeals Council remanded the matter consistent with the Court's order. (Dkt. 16-9 at 53-57, R. 586-90).

On October 16, 2020, ALJ Kroenecke conducted a hearing, where Kristina, her counsel, and vocational expert Kathleen M. Doehla all appeared by telephone. (Dkt. 16-8 at 31, R. 503). On December 21, 2020, ALJ Kroenecke issued an unfavorable decision finding that Kristina was not disabled. (Dkt. 16-2 at 5-23, R. 477-95).

2

Kristina now seeks judicial review of the ALJ's decision denying benefits. *See* 42 U.S.C. § 1383(c)(3).

## II.   STANDARD OF REVIEW

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 416.920(a). The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 416.920; *Briscoe*,

3

425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 416.920. (A negative answer at any point, other than step three and five, terminates the inquiry and leads to a determination that the claimant is not disabled.).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant – in light of her age, education, job experience, and residual functional capacity to work – is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart,* 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Kristina is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel,* 227 F.3d 863, 869 (7th Cir. 2000), *as amended* (Dec. 13, 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the

issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to [her] conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

### III. BACKGROUND

#### A. Factual Background

Kristina was twenty-nine years old on the date her application was filed. (Dkt. 16-2 at 37, R. 36). She has a high school education. (Dkt. 16-2 at 40, R. 39). She has no past relevant work history. (Dkt. 16-8 at 22, R. 494).

#### B. ALJ Decision

In determining whether Kristina qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a) and concluded that Kristina was not disabled. (Dkt. 16-8 at 5-23, R. 477-95). At Step One, the ALJ found that Kristina had not engaged in substantial gainful activity since her application date of May 2, 2016. (Id. at 7, R. 479).

At Step Two, the ALJ found that Kristina has severe impairments of asthma; a headache disorder; obesity; depression; a learning disorder/cognitive impairment; anxiety disorder; and attention deficit hyperactivity disorder. (Dkt. 16-2 at 54, R. 53). The ALJ also found that Kristina had nonsevere impairments of hypertension; high cholesterol; a remote left ankle injury; allergies; boils; rashes; and acute illnesses. (Id. at 7-8, R. 479-80).

At Step Three, the ALJ found that Kristina's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 416.920(d), 416.925, and 416.926, considering Listings 3.03A, 12.02, 12.04, 12.06, and 12.11. (Dkt. 16-8 at 8-9, R. 480-81). The ALJ also considered Kristina's obesity pursuant to Social Security Ruling 19-2p and her headache disorder under Social Security Ruling 19-4p. (Id.). As to the "paragraph B" criteria, the ALJ concluded that Kristina had moderate limitations in all four broad areas of functioning: understanding, remembering or applying information; interacting with others; adapting or managing oneself and concentrating, persisting, or maintaining pace. (Dkt. 16-8 at 9-11, R. 481-83).

After Step Three but before Step Four, the ALJ found that Kristina had the residual functional capacity ("RFC") to perform "light work," as defined in 20 C.F.R. § 416.967(b), with the following limitations: only occasional exposure to dusts, fumes, odors, gases, and other pulmonary irritants; able to understand, remember, and carry out short, simple, and routine instructions; able to sustain attention and/or concentration for at least 2-hour periods at a time and for 8 hours in the workday on

these short, simple, and routine tasks; can use judgment in making work-related decisions consistent with this type of work; requires occupations with set routines and procedures and few changes during the workday and no fast-paced production work (no assembly line work); only occasional interaction with coworkers and supervisors and no interaction with the general public; and in addition to normal breaks, she would be off task less than 5% of the 8-hour workday. (Dkt. 16-8 at 11, R. 483).

At Step Four, the ALJ concluded that Kristina has no past relevant work. (Dkt. 16-8 at 22, R. 494). The ALJ then concluded that, considering Kristina's age, education, work experience, and residual functional capacity, Kristina could perform jobs that exist in significant numbers in the national economy, such as mail clerk, cleaner/polisher, and laundry worker. (Id. at 22-23, R. 494-95). The ALJ thus concluded that Kristina was not disabled. (Id. at 23, R. 495).

## IV.   ANALYSIS

The Plaintiff presents one argument in support of remand[2]: that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to adequately account her own finding of moderate limitations in concentration. (Dkt. 23 at 8-18). Specifically, Plaintiff maintains that the ALJ's RFC analysis failed to

---

[2] Plaintiff also makes other arguments related to the ALJ's consideration of the evidence on remand and whether the ALJ adequately addressed the Court's concerns in its remand order. (Dkt. 23 at 12-16). Plaintiff suggests that the ALJ erred in relying on Kristina's activities of daily living and hearing testimony and that the ALJ improperly weighed the opinions of the consultative exmainers from 2006 and 2016 and the non-examining state agency consultants. (Id.). However, these arguments appear to be more akin to extraneous commentary and are largely perfunctory, as the crux of Plaintiff's argument is that the ALJ's RFC analysis failed to accommodate her concentration limitations. Accordingly, the Undersigned finds the perfunctory arguments waived. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016).

provide any concentration limitations that would sufficiently address Plaintiff's symptoms. (Id.).

The Seventh Circuit has defined the RFC as "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from her impairments." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). It is the most the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). When determining the RFC, the Regulations and Seventh Circuit case law make clear that an ALJ's RFC assessment must incorporate all of a claimant's functional limitations supported by the medical record. *See Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment."); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *see also* SSR 96-8p; 20 C.F.R. § 404.1545(a). Furthermore, if an ALJ relies on testimony from a vocational expert ("VE"), the hypothetical question the ALJ poses to the VE "must incorporate all of the claimant's limitations supported by the medical evidence in the record." *Varga,* 794 F.3d at 813.

Primarily, Plaintiff argues that the ALJ failed to include RFC limitations that would accommodate her concentration issues and that the limitations supposedly assigned to address concentration are insufficient or not supported by substantial evidence. As this Court previously reminded the ALJ, "limitations to the complexity of work-related decisions, interactions with coworkers, and the amount of changes in

9

a routine work setting had more to do with workplace adaptation than concentration, persistence, or pace." (Dkt. 16-9 at 43-44, R. 576-77). This Court also questioned how a limitation to "no fast-paced production work or assembly line work" could account for Kristina's limitations. (Id. at 44-45, R. 577-78). The ALJ failed to address that here. Thus, as it stands, the only remaining RFC limitations that could ostensibly address Kristina's moderate difficulties with concentration, persistence, and pace are the limitations to short, simple, and routine tasks; sustaining concentration for two hours at a time; and the ability to be off-task for up to 5% of the 8-hour workday beyond normal breaks.

The Commissioner maintains that the Seventh Circuit has affirmed almost every decision where the ALJ included "evidence-based limitations" to address a moderate rating for concentration, persistence, and pace. (Dkt. 24 at 7). The Court agrees; however, the ALJ's decision here is devoid of any explanation regarding why she believes a restriction to short, simple, routine work sufficiently addresses Kristina's moderate concentration limitations. *See Dawn F. v. Saul*, No. 1:20-cv-01374-RLY-DLP, 2021 WL 4445002, at *17 (S.D. Ind. Sept. 8, 2021), *report and recommendation adopted*, 2021 WL 4441529 (S.D. Ind. Sept. 28, 2021) ("The Seventh Circuit has established that when an ALJ determines that a claimant has moderate limitations in concentration, persistence, or pace, and then assigns work that is simple and routine, the ALJ's decision must contain some rationale to explain how the simple work restriction accommodates the claimant's particular limitations." (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010); *DeChamp v.*

10

*Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019); *Martin v. Saul*, 950 F. 3d 369, 374 (7th Cir. 2020)). Additionally, as Plaintiff points out in her brief, the vocational expert testified that an individual sustaining concentration for two-hour time blocks is normal for unskilled work[3]. (Dkt. 23 at 18-19 (citing Dkt. 16-8 at 59, R. 531)). Thus, because the ALJ has already limited Kristina to short, simple task, it is unclear whether limiting the claimant's concentration to two hours at a time constitutes an additional limitation at all.

Thus, the only remaining RFC limitation that may address Plaintiff's concentration issues is the limit to less than 5% off-task time. While the ALJ concluded that Kristina would be off-task less than 5% of the workday, it is not clear what evidence was used to support this limitation. The ALJ explained the off-task limitation by stating: "[i]n consideration of the combined effect of all the claimant's impairments, the record supports the likelihood of off task behavior less than 5% of the workday considering interference from residual symptoms." (Dkt. 16-8 at 21, R. 493). The ALJ concluded her consideration of Kristina's mental RFC analysis by stating: "No further limitation can be supported by the treatment records, her various mental status examinations of record, her admitted and objectively documented improvement with medication (including adjustments), and her various activities of

---

[3] The Regulations define "unskilled work" as work that needs little or no judgment to do simple duties that can be learned on the job in a short period of time, usually in 30 days. 20 C.F.R. § 404.1568. The Seventh Circuit has repeatedly found that a limitation to 'simple, routine, and repetitive tasks" is a limitation to "unskilled work." *See Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015).

daily living, I find the claimant has the mental capacity to perform work within her residual functional capacity limitations." (Id.).

The ALJ, however, never explains what residual symptoms might justify Kristina needing to be off-task 5% of the workday, or why a 5% limitation would be sufficient to address any of those symptoms. The Court finds the ALJ's conclusory justification of less than 5% off-task behavior especially troubling, because the vocational expert testified that 10% or more of off-task behavior would be work-preclusive. (Dkt. 16-8 at 58, R. 530). Nowhere in the ALJ's opinion does she explain why Kristina's symptoms, which were severe enough to warrant a moderate limitation in concentration, would be accommodated by a 5% off-task limitation but are not severe enough to warrant a 10% off-task limitation.

An ALJ "must build an accurate and logical bridge between an off-task percentage incorporated into the RFC and the record evidence." *G.S. v. Kijakazi*, No. 3:20-CV-50232, 2021 WL 6201303, at *5 (N.D. Ill. Dec. 20, 2021) (citing *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017)). Courts in this Circuit have routinely found error where an ALJ appears to have assigned an arbitrary off-task percentage without adequately explaining the justification for the chosen percentage. *Robert S. v. Kijakazi*, No. 1:20-cv-03095-TWP-DLP, 2022 WL 625370, at *8 (S.D. Ind. Feb. 16, 2022), *report and recommendation adopted sub nom. Sutton v. Kijakazi*, No. 1:20-cv-03095-TWP-DLP, 2022 WL 623799 (S.D. Ind. Mar. 3, 2022). This case is markedly similar to *Robert S.*, *Harris v. Saul*, No. 18-CV-1930, 2020 WL 221964, at *3 (E.D. Wis. Jan. 15, 2020), and *Garner v. Berryhill*, Civil No. 1:18-cv-211, 2019 U.S. Dist.

LEXIS 48653, 2019 WL 1324605, at *26-30 (N.D. Ind. Mar. 22, 2019), along with the many cases cited in *G.S. v. Kijakazi*, 2021 WL 6201303, wherein the ALJs provided an off-task percentage but failed to ground it in evidence. The Commissioner does not directly address this argument, but seems to suggest simply that the ALJ's mental RFC conclusion was adequately supported. (Dkt. 24 at 11). However, it is still unclear how the ALJ determined that a limitation to less than 5% off-task behavior would address Kristina's symptoms. In its prior 2018 decision, this Court advised the ALJ that she did not "specifically explain how she determined—based on the medical evidence and other evidence of record—that the Plaintiff's actual capability would be within the permissible bounds of being off task." (Dkt. 16-9 at 46, R. 579).

The ALJ may well have decided after reviewing the evidence that no concentration limitations were warranted based on the record, but she was required to explain why. *Kelli M. v. Saul*, No. 1:20-cv-01731-DLP-JRS, 2021 WL 4236802, at *7 (S.D. Ind. Sept. 17, 2021); *see also Passig v. Colvin*, 224 F. Supp. 3d 672, 682 (S.D. Ill. 2016); *Keith R. v. Saul*, No. 19 C 868, 2021 WL 308885, at *4 (N.D. Ill. Jan. 29, 2021) (citing *Lothridge*, 984 F.3d at 1233). Accordingly, the Court is not certain the ALJ's RFC analysis is supported by substantial evidence and this matter must be remanded for further consideration.

V. CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings. Final judgment will issue accordingly.

So ORDERED.

Date: 9/22/2022

_Doris L. Pryor_
Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email.